UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

SYLVESTER LYNN,

      Petitioner,

v.                                   Case No. 4:19cv101-RH-HTC

RICKY D. DIXON,[1]

      Respondent.

_____/

## ORDER AND REPORT AND RECOMMENDATION

Petitioner, Sylvester Lynn, proceeding *pro se*, filed a second amended petition under 28 U.S.C. § 2254 challenging his conviction in Leon County circuit court case 2012 CF 118 for burglary of an occupied structure and possession of burglary tools. ECF Doc. 34. The matter was referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After careful review of the second amended petition, the Secretary's response (ECF Doc. 38), and the Petitioner's reply (ECF Doc. 48), the undersigned respectfully recommends the petition be dismissed without an evidentiary hearing.

---

[1] Ricky D. Dixon succeeded Mark S. Inch as Secretary of the Florida Department of Corrections and is automatically substituted as the respondent. *See* Fed. R. Civ. P. 25(d). The clerk is directed to update the case file information to reflect Ricky D. Dixon as the Respondent.

## I.      BACKGROUND

Petitioner was arrested on January 11, 2012, for Burglary of an Occupied Structure and Possession of Burglary Tools after police, responding to a reported burglary in progress at a K & S Food Mart, stopped a car that appeared to be fleeing the scene and found Petitioner, his brother, and burglary tools in the back seat.  ECF Doc. 38-1 at 72.  The State filed an information against Petitioner on January 27, 2012, charging him with Burglary of an Occupied Structure and Possession of Burglary Tools.  ECF Doc. 38-1 at 70.  A jury found Petitioner guilty as charged, ECF Doc. 38-1 at 84-86, and on October 24, 2012, the Leon County Circuit Court adjudicated Petitioner guilty of the above offenses and sentenced him to thirty (30) years in prison as to Count I (as a Habitual Felony Offender and Prison Releasee Reoffender) and ten (10) years as to Count II (as a Habitual Felony Offender) to run concurrently with the sentence imposed in Count I.  ECF Doc. 38-1 at 256-267.

Petitioner filed a direct appeal of the judgment and sentence to the First District Court of Appeal ("First DCA"), *id.* at 268, and the First DCA affirmed *per curiam* without written opinion on December 5, 2013.[2]  *See* Case No.: 1D12-5214; ECF Doc. 38-2 at 367.  Petitioner did not seek review in the Florida Supreme Court

---

[2] Prior to filing his initial brief in that appeal, Petitioner filed a "Motion to Correct Sentencing Errors Pursuant to Rule 3.800(b)(2)", alleging the trial court erred in imposing a $100.00 indigent legal assistance lien, ECF Doc. 38-2 at 212, which the circuit court granted on May 21, 2013.  *Id.* at 235.  A corrected Judgment and Sentence was entered on October 24, 2012 (ECF Doc. 38-2 at 238-248) and the scrivener's error on Petitioner's scoresheet was corrected on June 5, 2013.  ECF Doc. 249-252.

or certiorari in the United States Supreme Court. ECF Doc. 1 at 2. Therefore, the conviction became final on Wednesday, March 5, 2014, ninety (90) days after the order affirming the conviction. *See Bond v. Moore*, 309 F.3d 770, 773–74 (11th Cir. 2002) (holding a state prisoner's conviction becomes final when the U.S. Supreme Court denies certiorari, issues a decision on the merits, or when the 90-day period to file a petition for certiorari expires).

Forty-two (42) days later, on April 16, 2014, Petitioner filed a habeas corpus petition in the First DCA alleging ineffective assistance of appellate counsel. *See* Case No.: 1D14-1774, ECF Doc. 38-2 at 370-77. The First DCA denied the petition *per curiam* without written opinion on May 16, 2014. ECF Doc. 38-2 at 384. One hundred and twelve (112) days later, on September 5, 2014, Petitioner filed a postconviction motion under Florida Rule of Criminal Procedure 3.850, ECF Doc. 38-2 at 419, which was continually pending until the First DCA issued its mandate affirming the circuit court's denial of the motion on March 8, 2019. Case No.: 1D18-0426; ECF Doc. 38-3 at 104.

Before the First DCA issued that mandate, however, Petitioner filed the original federal petition in this case on February 18, 2019. Thus, as Respondent acknowledges, all claims in the Second Amended Petition relating back to the claims in the Original Petition are timely under the Antiterrorism Effective Death Penalty Act ("AEDPA"), 28 U.S.C. and § 2254. ECF Doc. 38 at 7.

## II.   ANALYSIS

Petitioner raises three (3) grounds for relief.  In Ground One, Petitioner argues the trial court erred in denying a judgment for acquittal "where evidence was wholly circumstantial, and jurors required to pyramid inferences."  ECF Doc. 34 at 5.  In Ground Two, Petitioner claims trial counsel was ineffective for failing to object to the State's use of false testimony by a witness, Detroy Garrett.  *Id*. at 7.  In Ground Three, Petitioner argues trial counsel was ineffective for failing to move to suppress all evidence from the traffic stop which led to Petitioner's arrest.  *Id*. at 8.

The Secretary argues Grounds One and Two are unexhausted and procedurally defaulted and, regardless, all three (3) grounds fail on the merits.  ECF Doc. 38.  For the reasons set forth below, the undersigned agrees that Ground One is procedurally defaulted, but finds Petitioner has exhausted Grounds Two.  Regardless of exhaustion, however, Petitioner is not entitled to relief on any grounds raised because none have merit.

### A.   Failure to Exhaust

The AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless a petitioner has exhausted all means of relief available under state law.  Failure to exhaust occurs "when a petitioner has not 'fairly presented' every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review." *Pope v. Sec'y for Dep't. of Corr.*, 680 F.3d

1271, 1284 (11th Cir. 2012) (quoting *Mason v. Allen*, 605 F.3d 1114, 1119 (11th Cir. 2010)).

Procedural defaults generally arise in two ways: (1) where the state court correctly applies a procedural default principle of state law to arrive at the conclusion that the petitioner's federal claims are barred; or (2) where the petitioner never raised the claim in state court, and it is obvious that the state court would hold it to be procedurally barred if it were raised now. *Cortes v. Gladish*, 216 F. App'x 897, 899 (11th Cir. 2007). A federal habeas court may only consider a procedurally barred claim if (1) petitioner shows "adequate cause and actual prejudice," or (2) if "the failure to consider the claim would result in a fundamental miscarriage of justice." *Id.* (citing *Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991)).

    1.    <u>Lack of Exhaustion -- Ground One</u>

As stated above, Petitioner argues in Ground One that the trial court erred in not granting a judgment for acquittal where "evidence was wholly circumstantial, and jurors required to pyramid inferences." ECF Doc. 34 at 5. Specifically, Petitioner argues that "[e]ven viewing the evidence in a light most favorable to the State, the State failed to establish a prima facie case of guilt. The State wholly failed to produce competent evidence to support every element of the crimes charged, in violation of due process under the Florida Constitution and Amendment 5 and 14 of the United States Constitution." *Id.*

The Secretary argues Petitioner did not exhaust this claim because the argument Petitioner raised on direct appeal (which is the same as the issue raised in the federal petition) is based on grounds different from those Petitioner raised at trial in support of his oral motion for judgment of acquittal.  The undersigned agrees.

At the close of the State's case at trial, defense counsel moved for judgment of acquittal, "based on the lack of eyewitnesses who can place Mr. Lynn at the scene [and] the lack of any evidence tying the burglary tools to the crime or to Mr. Lynn, and that will be all."  ECF Doc. 38-1 at 499 (no written motion can be found on the docket).  Thus, Petitioner's argument at trial concerned only a lack of eyewitnesses at the scene and lack of evidence tying the tools to the burglary or to Petitioner.

In this petition, however, as in his direct appeal, Petitioner argues he was entitled to a judgment of acquittal because, to find him guilty, the jury was required to "pyramid" inferences – something impermissible under Florida Law.  *See e.g., Miller v. State*, 770 So. 2d 1144, 1149 (Fla. 2000) ("the circumstantial evidence test guards against basing a conviction on impermissibly stacked inferences.") (citing *Gustine v. State,* 86 Fla. 24, 28, 97 So. 207, 208 (1923) (reversing conviction because "[o]nly by pyramiding assumption upon assumption and intent upon intent can the conclusion necessary for conviction be reached").

Under Florida Rule of Criminal Procedure 3.380(b), a motion for judgment of acquittal must "fully set forth the grounds on which it is based".  Fla. R. Crim. P. 3.380(b); *Woods v. State*, 733 So.2d 980, 984–85 (Fla.1999) (rejecting the appeal of

the denial of a motion for judgment of acquittal that failed to fully set forth "the specific grounds upon which the motion was based"); *Pryor v. State*, 48 So.3d 159, 162 (Fla. 1st DCA 2010) (finding a motion for judgment of acquittal that failed to raise the defendant's knowledge insufficient to address that element in a charge of tampering with evidence).  To preserve an argument on such a motion for appeal, the grounds asserted on appeal must be the same as those argued at trial.

As the State points out, in *Morales v. State,* 170 So. 3d 63 (Fla. 1st DCA 2015), the First DCA held it was precluded from addressing the merits of Morales' argument on appeal because the grounds he asserted on appeal supporting a judgment of acquittal were not the same grounds he argued at trial.  *Morales*, 170 So. 3d at 66.  Specifically, the court explained that on appeal "Morales argues that the State's evidence failed to prove a premeditated intent to kill," while at trial "defense counsel only advanced an argument attacking identity." *Id.*  Thus, "[t]he record is clear that the argument for a judgment of acquittal was solely directed to the sufficiency of the evidence regarding the identity of the shooter," rather than "the sufficiency of the evidence regarding the element of premeditation." *Id.*

Similarly, Petitioner's arguments at trial that he was entitled to judgment because of the lack of sufficiency of the evidence identifying him as the burglar and lack of sufficiency of the evidence tying him to the burglary tools are entirely different from the argument that the jury engaged in impermissible stacking of inferences.  In determining the former, the trial court considered whether the direct

evidence presented was sufficient to establish the State's prima facie case. Indeed, in denying the motion for judgment, the Court stated, "I believe there's enough evidence, and the State's has made a prima facie case for the charges, and it's sufficient at this point to go to the jury." ECF Doc. 38-1 at 501. In determining the latter, however, the trial court considered whether the circumstantial evidence presented was sufficient to support the elements of the State's prima facie case. *See Brown v. State,* 672 So.2d 648, 650 (Fla. 4th DCA 1996) ("Circumstantial evidence is insufficient when it requires pyramiding of assumptions or inferences in order to arrive at the conclusion of guilt.").

In his Reply, Petitioner argues the Secretary waived this procedural bar by not raising it in the Secretary's Appellee Brief on direct appeal. ECF Doc. 48-1 at 2-3. Petitioner is wrong. A review of the record shows that the State raised the procedural bar in its Answer Brief on appeal. *See* Appellee's Ans. Br. At 3, ECF Doc. 38-2 at 317. Specifically, in the Brief, the State argued "portions of Appellant' s argument are wholly unpreserved for appellate review" and noted that Petitioner's argument on appeal is different from the motion for judgment he made at trial. *Id.*

Also, because the State argued on appeal that Petitioner's claim was procedurally barred and there is no indication the First DCA denied relief on this ground on the merits, this Court may presume the First DCA's denial was based on a procedural bar. *See, e.g., Bennett v. Fortner*, 863 F.2d 804, 807 (11th Cir. 1989) ("This circuit to a point has presumed that when a procedural default is asserted on

appeal and the state appellate court has not clearly indicated that in affirming it is reaching the merits, the state court's opinion is based on the procedural default."). "[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts." *See Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001). Indeed, this Court "may not assume that had the state court issued an opinion, it would have ignored its own procedural rules and reached the merits of this [issue]. In fact, the most reasonable assumption is that had the state court ruled, it would have enforced the procedural bar." *Tower v. Phillips*, 7 F.3d 206, 211 (11th Cir. 1993).

Thus, the undersigned finds Ground One is not exhausted as it was not raised in the state courts and is procedurally defaulted because Petitioner cannot now return to state court to exhaust this ground for relief. Also, Petitioner does not raise any argument that exhaustion does not apply because for cause and prejudice or because of a fundamental miscarriage of justice.

### 2.    Lack of Exhaustion – Ground Two

In Ground Two, Petitioner argues trial counsel was ineffective for failing to object to certain false testimony provided by Garrett, which counsel knew was false, and also "failed to bring the falsity before the court at any time, but especially in his motion for JOA." ECF Doc. 34 at 7.

Garrett was a front seat passenger in the vehicle carrying Petitioner, which was fleeing from the burglary scene. ECF Doc. 38-1 at 73. Garrett testified at trial

he was asleep at the beginning of the trip that night, *id*. at 205, but was in the passenger's seat awake when the Lynn brothers flagged the vehicle down. *Id.* at 161. Initially, Garrett testified he "didn't personally see [the Lynn brothers] get in the vehicle with anything", *id.* at 165, but later testified "I seen them carrying tools, *id.* at 174. He also testified he did "floor work" or "tile work" and had only the following tools in the car before he picked them up: "buffing pads, propane tanks, ratchet sets, wrenches, things of that nature." *Id.* at 165. Specifically, he denied having a sledgehammer or more than one small hammer, if even that, in the car before the two men entered the car. *Id.* Also, at trial, Garrett was shown the two sledgehammers and the hammer and testified that they were not his. *Id.* at 206.

As for the stop, Garrett testified that two or three minutes after they picked up the Lynn brothers, the police stopped them. *Id.* at 163. He was awake when the blue lights came on behind him and he asked Calloway, the driver, if she was speeding. He then turned around and asked the men in the back, "y'all good back there? Everything all right?" and the men answered "yeah, we good, man." *Id.* at 167. He told the two men, "If anybody in here got anything that's yours, you need to keep it on you. Point blank. You know what I'm saying? Don't discard nothing in the vehicle, nothing of that nature" and the two men responded, simply "We good." *Id.* at 168. He also testified he asked them, "what's going on? I mean is there anything y'all want to tell me now?" They did not answer, though, because the police began yelling instructions through the loudspeaker of one of the police vehicles. *Id.* at 169.

Garrett also testified that he told police at the scene that one of the individuals began changing clothes when the blue lights came on. *Id.* at 171. Finally, Garrett testified he did not know the individuals that they picked up that night but then explained that "later down the line" he realized that he "had actually did work with one of the individuals before." *Id.* at 172.

The Secretary argues this claim is unexhausted and procedurally defaulted because, although this claim is "somewhat similar" to a claim Petitioner previously asserted in state court in ground three of his Second Amended Motion for Postconviction Relief, ECF Doc. 38-2 at 491, the argument in state court only dealt with what counsel argued during the motion for judgment of acquittal and not to counsel's failure to object to Garrett's testimony. ECF Doc. 38 at 12-13. The undersigned finds this to be a distinction without a difference.

A review of the 3.850 motion as well as the hearing transcript for the evidentiary hearing on the 3.850 motion that Petitioner's argument to the state court was that the trial court erred for not bringing out, in some way, whether through a motion of judgment or acquittal, on cross-examination, or a new trial, that Garrett lied when he testified he did not know Plaintiff. In other words, when Petitioner says counsel erred in failing to object to Garrett's testimony – he is taking issue with counsel allowing the testimony to be admitted without calling attention to its falsity in any way.

Although Petitioner focused primarily on counsel's failure to raise Garrett's lie to the Court when counsel moved for judgment on acquittal in the 3.850 motion, ECF Doc. 38-2 at 492-93, 95, the state court also considered whether there was any error in counsel's failure to point out Garrett's lies on cross-examination. During the evidentiary hearing, Petitioner's counsel questioned trial counsel about his limited cross-examination of Garrett, and counsel explained he made a strategic decision not to cross-examine Garrett on his knowledge of Petitioner because he wanted to point out Garrett's inconsistent statements (i.e., statements that were inconsistent with other witnesses) at closing to argue the jury had not proven its case beyond a reasonable doubt rather than allow Garrett to explain the inconsistencies on cross. ECF Doc. 38-2 at 551-52.

Also, at the hearing, when Petitioner was given the opportunity to explain the issue to the Court, he stated, "I would like the Court to be aware of the fact that there was no strategic reason not to bring up Mr. Garrett's false testimony that he – of knowing – not knowing me when Mr. Lawton was aware that me or Mr. Garrett was codefendants in unrelated crimes that occurred before the crime that I went to trial for. And that we were also - - I also informed Mr. Lawton that me and Mr. Garrett had previously served together at a correctional institution." ECF Doc. 38-2 at 559. In considering that argument, the state court engaged in an exchange with Petitioner regarding whether it would have been more damaging to Petitioner's case for the jury to know Petitioner had committed a prior crime with Garrett. As the state court

put it, Petitioner's argument was that he was "prejudiced because the jury never knew [Petitioner] knew [Garrett]." *Id.* at 561.

Thus, the undersigned finds that Ground Two has been exhausted. Whether trial counsel was ineffective in not pointing out to the court or the jury that Garrett had lied about not knowing Petitioner was squarely before the state court. As discussed below, however, the claim, while exhausted, has no merit.

### B.    Both Ground One and Ground Two Fail on Their Merits

Regardless of whether Petitioner exhausted either Ground One or Ground Two, both claims fail on their merits.

### 1.    Ground One

Even if Petitioner had preserved Ground One for appeal, Ground One fails on the merits for two (2) reasons. First, a federal habeas court cannot reexamine a state court's determination of purely state law issues. "To the extent that [Petitioner] alleges that the State's evidence did not exclude every reasonable hypothesis of innocence or required the pyramiding of inferences in contravention of state law, these claims are not cognizable on federal habeas review." *See Horne v. Sec'y, Dep't of Corr.*, 2019 WL 8752227, at *3 (M.D. Fla. Feb. 6, 2019) (citing *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law issues.")).

Second, Petitioner is wrong in asserting that the federal court should apply the Florida standards of proof to sufficiency-of-the-evidence claims on habeas review.

Instead, in evaluating the sufficiency of circumstantial evidence, federal courts must follow the federal standard articulated in *Jackson v. Virginia*, 443 U.S. 307 (1979) (rather than the state standard), pursuant to which a petitioner is entitled to relief *only* if "no rational trier of fact could have found proof of [his] guilt beyond a reasonable doubt." *Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 461 (11th Cir. 2015), *citing Jackson,* 443 U.S. at 324. Petitioner has not met that standard here.

Under *Jackson*, the evidence presented at trial by the State was sufficient to allow a rational trier of fact to find proof of Petitioner's guilt beyond a reasonable doubt. Two (2) witnesses – Willie Burke and Andrea Campbell -- testified at trial to hearing loud banging at the food mart, which was consistent with the damage to the doors later discovered by police when they arrived and consistent with the use of sledgehammers. Campbell also testified he saw two (2) individuals run from behind the building to a light-colored car with a dark top, which turned from Springhill to Springsax Road.

A police officer testified seeing a light-colored car with a dark top leaving the scene, and, when the same car was later stopped by law enforcement, Petitioner, along with his brother, were found in the back seat with tools that did not belong to the other passengers and were not in the car prior to the arrival of Lynn and his brother. Also, the two brothers were recorded saying to each other, "How we going to explain this s**t?" and "We stuck" repeatedly. ECF Doc. 38-1 at 216-17. At one

point, one of them stated, "They don't have any evidence. They didn't catch us on scene" and at another point, one of them said, "All you got to tell them is that we were coming from work and we just stopped by to get some beer." *Id.* The above evidence was sufficient to allow a rational juror to find guilt beyond a reasonable doubt. Thus, regardless of exhaustion, Petitioner is not entitled to habeas relief on this claim.

    2.   <u>Ground Two</u>

Grounds Two and Three of the petition are based on claims of ineffective assistance of trial counsel ("IATC"). An IATC claim requires a showing that (1) counsel's performance during representation fell below an objective standard of reasonableness, and (2) prejudice resulted, *i.e.*, that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 689 (1984). The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential. *Id.* at 689. The Petitioner bears the burden of proving that counsel's performance was unreasonable under prevailing professional norms and that the challenged action was not sound strategy. *Id.* at 688-89.

*Strickland*'s prejudice prong requires a petitioner to allege more than simply that counsel's conduct might have had "some conceivable effect on the outcome of

the proceeding." *Strickland*, 466 U.S. at 693. The petitioner must show a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Bare allegations the petitioner was prejudiced by counsel's performance are not enough. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987).

Petitioner is also not entitled to relief on Ground Two because trial counsel's decision not to call the jury's attention to Petitioner's relationship with Garrett was a strategic one, which is entitled to great deference. As the state court correctly determined, letting the jury know how Garrett knew Petitioner would have been likely fatal to Petitioner's case.

Petitioner explained in his 3.850 motion that trial counsel had been his counsel in a previous burglary case, the "Fair Price burglary", in which Garrett and Petitioner had been co-defendants. Petitioner argued it would have helped his case here to let the jury known that Garrett was lying about not knowing Petitioner as the two men were involved in the burglary of the Fair Price Store and had used the same sledgehammer found in the vehicle. ECF Doc. 38-2 at 493. Petitioner explained during the evidentiary hearing on the 3.850 motion that the sole benefit of revealing this information to the jury was "it would have led more credibility to my – to my defense that me and this guy was coming home – returning home from work and that none – we was not involved in the crime that I was on trial for." ECF Doc. 38-3 1-2. Petitioner also argued in the evidentiary hearing that his counsel should have

revealed to the jury that Garrett knew Petitioner because the two of them had "served time together at a correctional institution." *Id.* at 597.

The 3.850 court rejected this claim in open court during the evidentiary hearing and explained "the decision made by Mr. Lawton was the right decision. Because opening the door to how these two fellows know each other is not a good idea. That would probably seal the fate of the defendant."[3] ECF Doc. 38-2 at 573. The state court also determined "Mr. Lawton did a good job of raising credibility through other means." *Id.* Thus, Petitioner failed to show he was prejudiced by trial counsel's conduct. The undersigned finds no error in the state court's determination.

"It is especially difficult to succeed with an ineffective assistance claim questioning the strategic decisions of trial counsel who were informed of the available evidence. Even a dozen years before there was any AEDPA deference, the Supreme Court noted that 'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" *Nance v. Warden, Georgia Diagnostic Prison*, 922 F.3d 1298, 1302 (11th Cir. 2019) (citing *Strickland v. Washington*, 466 U.S. 668, 690 (1984)). "*Strickland* mandated one layer of deference to the decisions of trial counsel. . . . When § 2254(d) was amended by AEDPA in 1996, that added another layer." *Nance*, 922 F.3d at 1303. Given the

---

[3] The 3.850 court memorialized its oral findings in an "Order Denying Defense Motion for Post-Conviction Relief" issued January 12, 2018, which contained no additional reasoning but ordered, "Defense's motion is denied based upon the Court's findings announced during the hearing on the record." ECF Doc. 38-2 at 542.

deference due, it is a "rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding." *Johnson v. Sec'y*, DOC, 643 F.3d 907, 911 (11th Cir. 2011).  And, "for the reasons we have already discussed, it is rarer still for merit to be found in a claim that challenges a strategic decision of counsel."  *Nance*, 922 F.3d at 1303.

The state court's conclusion on this claim was not contrary to, and did not involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court.  28 U.S.C. § 2254(d).  Petitioner is not entitled to habeas relief on this claim.

## C.      Ground Three Also Fails on the Merits

In Ground Three, Petitioner argues trial counsel was ineffective for not moving to suppress evidence obtained from the *Terry* stop[4] of the vehicle.   ECF Doc. 34 at 8.  The 3.850 denied this claim because a motion to suppress would not have been "meritorious".  Specifically, the court determined "[t]here was a basis for pulling this car over because of the occurrence of a crime or the sounds of a crime and that gave the reasonable suspicion to stop the vehicle."  ECF Doc. 38-3 at 12.  Thus, the state court denied relief because Petitioner failed to meet the prejudice

---

[4] *See Terry v. Ohio,* 392 U.S. 1 (1968) (holding that law enforcement officer's reasonable suspicion that a person may be involved in criminal activity permits the officer to stop the person for a brief time and take additional steps to investigate further).

prong under *Strickland*. Since Petitioner raised this claim in the 3.850 motion, there is no issue regarding exhaustion.

The state court's conclusion was not contrary to, and did not involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court. 28 U.S.C. § 2254(d). Notably, an attorney cannot be deemed ineffective for failing to raise claims that are "reasonably considered to be without merit." *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000) (quotation omitted). The 3.850 court was reasonable in finding that a motion to suppress would not have merit.

"The United States Supreme Court has 'held that the police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause.'" *State v. Teamer*, 151 So. 3d 421, 425–26 (Fla. 2014) (citing *United States v. Sokolow,* 490 U.S. 1, 7 (1989) (quoting *Terry,* 392 U.S. at 30); *Popple v. State,* 626 So.2d 185, 186 (Fla.1993) ("[A] police officer may reasonably detain a citizen temporarily if the officer has a reasonable suspicion that a person has committed, is committing, or is about to commit a crime." (citing § 901.151, Fla. Stat. (1991))). However, a "police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" an investigatory stop. *Terry,* 392 U.S. at 21. The Supreme Court has described reasonable suspicion as "a particularized and objective

basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez,* 449 U.S. 411, 417 (1981). This standard requires "something more than an 'inchoate and unparticularized suspicion or hunch.'" *Sokolow,* 490 U.S. at 7 (quoting *Terry,* 392 U.S. at 27) (internal quotation marks omitted).

When the vehicle carrying Petitioner was pulled over, law enforcement had more than just a unparticularized suspicion or hunch. As the state court correctly concluded, law enforcement had reasonable suspicion a crime had just occurred. First, a witness called police reporting hearing banging from the K & S Food Mart "as if they're trying to break the walls down." ECF Doc. 38-1 at 111. The officer arrived within twenty (20) seconds and avoided detection by not activating her lights and parking a little distance from the food mart. As the officer walked toward the scene, she observed the car in question start to make a right turn towards her, but "[the officer] assumed that it had [seen her] standing there" and "it immediately made an abrupt turn, squealing its wheels and turned back down the road it came from." *Id.* at 111-112. She notified the other officers what she had observed, and within seconds, Officer Williams observed a vehicle matching her description on the street where Officer Bennett said it would be, traveling in the direction she said it would be traveling in.

The abrupt change in direction of the vehicle coupled with the reported break-in seconds earlier and the squealing of tires as it sped away at the precise moment the driver could have seen the officer, supports a finding of reasonable suspicion that

the car was involved in criminal activity. *See, e.g., F.E.A. v. State*, 804 So. 2d 528, 530 (Fla. Dist. Ct. App. 2002) ("under *Wardlow*, Appellant's leaving at the sight of law enforcement and being in a high crime area gave the officer a reasonable suspicion to stop Appellant and further investigate."); *McGee v. State*, 818 So. 2d 558, 559 (Fla. Dist. Ct. App. 2002) ("unprovoked flight upon noticing the police was a pertinent factor in determining reasonable suspicion") (citing *Illinois v. Wardlow*, 528 U.S. 119 (2000)). The traffic stop was therefore a permissible investigatory stop, and any motion to suppress would have been without merit.

Thus, counsel was not ineffective for declining to pursue such a motion, and the Petitioner is not entitled to federal habeas relief on this claim.

## III.   CONCLUSION

### A.   Evidentiary Hearing

The undersigned finds that an evidentiary hearing is not warranted. In deciding whether to grant an evidentiary hearing, this Court must consider "whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). Additionally, this Court must account for the deferential standards prescribed by § 2254. *See id.* Upon consideration, the undersigned finds that the claims in this case can be resolved without an evidentiary hearing. *See Schriro*, 550 U.S. at 474.

**B.    Certificate of Appealability**

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2254 Rule 11(a).  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  28 U.S.C. § 2254 Rule 11(b).

After review of the record, the Court finds no substantial showing of the denial of a constitutional right.  § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, it is also recommended that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Rule 11(a), Rules Governing Section 2254 Cases.  If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is ORDERED:

1.      The clerk is directed to update the case file information to reflect Ricky D. Dixon as the Respondent instead of Mark S. Inch.

Additionally, it is respectfully RECOMMENDED that

1.      That the second amended petition under 28 U.S.C. § 2254, ECF Doc. 34, be DENIED without an evidentiary hearing.

2.      That a certificate of appealability be DENIED.

3.      That the clerk be directed to close the file.

Done at Pensacola, Florida this 23rd day of December 2021.

/s/ Hope Thai Cannon
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations must be filed **within fourteen (14) days** of the date of the Report and Recommendation.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>  An objecting party must serve a copy of its objections upon all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.